UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE MARIE SIMMONS,<br><br>    Plaintiff,<br><br>v.<br><br>KIMBERLY LUKE,<br><br>    Defendant. | Case No. 19-cv-00139-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 23 |

Plaintiff Joyce Marie Simmons filed this *pro se* civil rights action under *Bivens v. Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Federal Correctional Institution in Dublin, California ("FCI-Dublin") Unit Manager Kimberly Luke was deliberately indifferent to her safety, in violation of the Eighth Amendment. Dkt. No. 11. Now pending before the Court is defendant's motion to dismiss or, in the alternative, for summary judgment. Dkt. No. 23. Plaintiff has filed an opposition, Dkt. No. 26, and defendant has filed a reply, Dkt. No. 27. For the reasons set forth below, the Court GRANTS defendant's summary judgment motion.

**BACKGROUND**

The following facts are undisputed unless otherwise noted.

FCI-Dublin is an all-female, low-security federal correctional institution with an adjacent minimum-security satellite camp. Luke Decl. ¶ 2 and Ex. B. There are no armed correctional officers assigned within the FCI-Dublin satellite camp. Luke Decl. ¶ 4. There are two armed correctional officers who patrol the perimeter of both the correctional institution and the satellite camp, and watch for inmates who may be attempting to escape. Dkt. No. 26 at 2. There is no known history of FCI Dublin officers opening fire on inmates. Luke Decl. ¶ 4; Dkt. No. 26 at 2.

During the relevant time period, plaintiff was housed at the FCI-Dublin satellite camp and defendant Luke was employed there as the Unit Manager. Luke Decl. ¶ 1. As FCI-Dublin's Unit Manager, defendant Luke managed the programs and activities of the camp and supervised the other members of the Unit Team. Luke Decl. ¶ 1. The assigned uniform color for inmates assigned to the satellite camp was blue and the assigned uniform color for inmates assigned to the low security unit was khaki. Luke Decl. ¶ 3. FCI Dublin's Trust Fund Department handles the issuance of prison clothing. Luke Decl. ¶ 3. If clothing is sought for religious purposes, FCI Dublin's Religious Services Department handles the issuance of the relevant clothing. Luke Decl. ¶ 3. The issuance of clothing is not handled by defendant Luke's department, the Unit Team. Luke Decl. ¶ 3.

In or around September 2017, FCI-Dublin's Trust Fund department head Andrea Giles approved the issuance of a khaki dress to plaintiff for religious reasons.

On September 5, 2017, plaintiff emailed Chaplain Margaret Ashforth of the Religious Services department, complaining that although Ms. Giles had approved the issuance of a khaki dress, plaintiff had not received the dress. Luke Decl. ¶ 4 and Ex. 1; Dkt. No. 26 at 6. On September 6, 2017, Chaplain Ashford responded that she would send Ms. Giles a memo authorizing the dress. Luke Decl. ¶ 4 and Ex. 1. Plaintiff forwarded this email to Ms. Giles. Luke Decl. ¶ 4 and Ex. 1.

On September 13, 2017, plaintiff filed a "Request for Administrative Remedy," requesting that a jumper dress be issued to her immediately for religious reasons. Dkt. No. 23-1 at 20.

On September 22, 2017, plaintiff received an email from Ms. Giles stating as follows:
> As discussed at mainline, you (sic) religious article (dress) is standing by at the camp Unit team for approval as the color of the dress is Khaki.
> I will get back to you as soon as obtain (sic) the approval.
> Thank you.

Dkt. No. 26 at 16. Plaintiff alleges that this reference to the Unit team refers to obtaining defendant Luke's approval for the issuance of the dress because defendant Luke was the Unit Manager during the relevant time and her approval would be required before plaintiff could wear a dress that was not the required color (at that time, blue). Dkt. No. 26 at 2. Plaintiff argues that this email indicates that defendant Luke was aware of, and approved, the khaki dress. Dkt. No. 26

2

at 2. Defendant Luke states that she was unaware that plaintiff requested, was issued, or wore a khaki colored dress. Luke Decl. ¶ 3.

On or about September 27, 2017, the khaki dress was issued to plaintiff with Ms. Giles' permission. Dkt. No. 26 at 26. Plaintiff alleges that the dress was issued to her in the presence of Unit Team Counselor Rhaney and Unit Manager defendant Luke. Dkt. No. 26 at 26. Defendant Luke does not recall being present when the dress was issued and states that she was unaware that plaintiff requested, was issued, or wore a khaki colored dress. Luke Decl. ¶ 3.

Plaintiff wore this khaki dress without incident until October 4, 2017, when Mr. Hilliard angrily questioned plaintiff whether she had a memo authorizing her to wear the khaki dress. Dkt. No. 26 at 26. Plaintiff took off the dress and gave it to Officer Phillips. Dkt. No. 26 at 26. Two hours later, Officer Phillips returned the dress to her. Dkt. No. 26 at 26.

On October 5, 2017, plaintiff voluntarily withdrew the Request for Administrative Remedy filed on September 13, 2017. Dkt. No. 23-1 at 19; Dk. No. 26 at 1. That same day, plaintiff was informed by FCI Unit Manager Moore that if she had gone outside while wearing the khaki dress, perimeter officials could have fired upon her, thinking that she was attempting to escape. Dkt. No. 26.

On October 6, 2017, plaintiff sent Captain Castillo an email, recounting the events of October 4, 2017, and requesting a memorandum formally authorizing her to wear the khaki dress, and requesting a dress in green when the camp switched its clothing to green. Dkt. No. 26 at 26.

Plaintiff alleges that she pursued administrative remedies for the issue raised in this action by directly filing a grievance with the BOP Regional Director (Form BP-10) on October 18, 2017, and a grievance with the BOP Central Office (Form BOP-11) on December 21, 2017, but that she received no answer from either level. Dkt. No. 26 at 6, 8. She alleges that she felt it was necessary to bypass the first level of the grievance process because she was concerned that she would face retaliation and because she was housed in the Special Housing Unit at that time. Dkt. No. 26 at 1, 6. Defendant Luke states that the BOP has no record of ever receiving these submissions or otherwise making any determination with respect to them. Dkt. No. 23-1 at 3-4, 6-7, 13-16.

1    On April 4, 2018, plaintiff filed a claim under the Federal Tort Claim Act, which was
2    denied on June 11, 2018.  Dkt. No. 26 at 10-12, 14.

**DISCUSSION**

Defendant Luke argues that this action should be dismissed under Fed. R. Civ. P. 12(b)(6) because a *Bivens* remedy should not be extended to plaintiff's claim pursuant to *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).  In the alternative, defendant argues that the Court should grant summary judgment in her favor because plaintiff failed to exhaust her administrative remedies, defendant Luke did not violate plaintiff's Eighth Amendment rights, and defendant Luke is entitled to qualified immunity.  Dkt. No. 23.

The Court finds that, viewing the record in the light most favorable to plaintiff, there is no triable issue of material fact as to whether defendant Luke violated plaintiff's Eighth Amendment rights, and defendant Luke is therefore entitled to qualified immunity.  The Court GRANTS summary judgment on these grounds.  As such, the Court need not address defendant Luke's other arguments.

### I.      Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the

4

pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## II.     Legal Standard

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The failure of prison officials to guarantee inmate safety violates the Eighth Amendment when two requirements are met: (1) the inmate must show that she is incarcerated under conditions that pose a substantial risk of serious harm; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. To establish liability under the Eighth Amendment, the prison official must know of and disregard an excessive risk to inmate safety by failing to take reasonable steps to abate it. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference. *Id.* at 837. Neither negligence nor gross negligence will constitute deliberate indifference. *See Farmer*, 511 U.S. at 835–36 & n.4; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## III.    Analysis

Viewing the facts in the light most favorable to plaintiff, the Court presumes that defendant Luke was aware that plaintiff had been issued and regularly wore a khaki-colored dress whereas other inmates in the satellite camp were wearing blue uniforms. However, the record, even when

viewed in the light most favorable to plaintiff, does not demonstrate a triable issue of fact as to whether (1) allowing plaintiff to wear a khaki-colored dress subjected plaintiff to a substantial risk of serious harm; and (2) defendant Luke knew that wearing a khaki-colored dress placed an inmate at risk of being shot at by correctional officials, and defendant Luke ignored this risk.

There is no triable issue of fact as to the first element of the Eighth Amendment claim. Plaintiff has not established that inmates wearing clothing that differed in color from the mandated uniform color were at substantial risk of being fired upon by correctional officers. It is undisputed that there has never been an instance of a correctional official firing on an FCI-Dublin inmate. In addition, none of the FCI-Dublin correctional officials involved in allowing the khaki-colored dress (Giles, Ashforth, Rhaney, Phillips, Castillo) expressed any concern about the khaki-colored dress causing confusion as to whether plaintiff was trying to escape from the adjacent minimum security institution.[1] Given this context, Unit Manager Moore's statement does not, by itself, establish a triable issue of fact as to whether plaintiff faced a serious risk of substantial harm. Plaintiff has not identified any evidence from which a reasonable jury could conclude that wearing a khaki-colored uniform in the minimum security camp when the mandated uniform color was blue subjected an inmate to a risk of being shot.

There is no triable issue of fact as to the second element of the Eighth Amendment claim. Even if plaintiff faced a serious risk of substantial harm when she wore the khaki-colored uniform, to survive summary judgment, plaintiff must establish that there is a triable issue of fact as to whether defendant Luke was aware of this risk. There is nothing in the record that indicates that defendant Luke shared Unit Manager Moore's assessment of the risk that plaintiff faced when wearing a khaki-colored dress. Plaintiff argues that "any reasonable person would have known that this was a violation of [prison] policy that put plaintiff at risk for substantial harm." Dkt. No. 26 at 3. While obviousness of risk may be one factor in demonstrating subjective knowledge, a

---

[1] It appears that plaintiff continued to wear the khaki-colored dress after her encounter with Unit Manager Moore. The day after Unit Manager Moore allegedly told plaintiff that the khaki-colored uniform put her at risk of being shot, plaintiff sought to continue wearing the dress. She requested that FCI-Dublin Captain Castillo provide her with a memorandum, a copy of which she would keep on her person and a copy of which would be left in the main office, that indicated that she was authorized to wear the khaki dress. Dkt. No. 26 at 26.

defendant's liability must still be based on actual awareness of the risk rather than constructive knowledge. *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015). Plaintiff has not designated specific facts showing that Defendant Luke knew that plaintiff faced a serious risk of substantial harm when she wore the khaki-colored uniform, much less ignored that risk.

Plaintiff's *Bivens* claim against defendant Luke fails because her unsupported allegation that Unit Manager Moore accurately described the risk to plaintiff's safety when wearing the khaki-colored dress and her conclusory allegation that defendant Luke was aware of this risk are insufficient to create a genuine issue of material fact. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir.2001) (stating that conclusory allegations unsupported by factual data are insufficient to defeat a summary judgment motion).

## IV.     Qualified Immunity

Defendant Luke argues that she is entitled to qualified immunity because she did not violate plaintiff's Eighth Amendment rights, or because the issuance of a khaki dress in this particular context did not violate any clearly established law.

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "'swiftly and firmly'" in situations where the rules governing their actions are often "'voluminous, ambiguous, and contradictory.'" *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citing *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.* To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct

violated a constitutional right, and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

With respect to the second prong of the qualified immunity analysis, the Supreme Court has recently held that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (citation and internal quotation marks omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. (citation and internal quotation marks omitted). In conducting this analysis, the Court must determine whether the pre-existing law provided defendants with "fair notice" that their conduct was unlawful. *Id.* at 1777.

As discussed above, the record before the Court, viewed in the light most favorable to plaintiff does not establish an Eighth Amendment violation. Accordingly, Defendant Luke is entitled to summary judgment on the alternative ground of qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment in favor of defendant Luke. The Clerk shall enter judgment in favor of defendant and against plaintiff, and close the case.

This order terminates Dkt. No. 23.

**IT IS SO ORDERED.**

Dated: 10/2/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge